**Dilma Fuentes v. Change to Win, et al**
EDCV 16-76 JVS (KKx)

## Order Regarding Motion for Summary Judgment

Defendant, Change to Win ("Change to Win"), moved pursuant to Rule 56 of the Federal Rules of Civil Procedure for summary judgment on Plaintiff Dilma Fuentes' ("Fuentes") complaint. (Mot., Docket No. 18.) Fuentes did not oppose. Change to Win replied. (Reply, Docket No. 29.)

Fuentes' attorney appeared at the hearing on January 5, 2017. (Min., Docket No. 31.) The Court ordered Fuentes' attorney to file, no later than January 15, 2017, an application requesting an extension of time to file an opposition to the summary judgment motion. (Id.) On January 27, 2017, the Court found that Fuentes' attorney had good cause for relief from timely failure to file a timely opposition, so the Court ordered Fuentes to file and serve her opposition no later than February 6, 2017. (Min., Docket No. 36.) However, Fuentes did not file an opposition.

For the following reasons, the Court **grants** Change to Win's motion for summary judgment.

## I. BACKGROUND

### A.    Factual Background

Change to Win federation is a coalition of American labor unions, and it coordinates and provides staff support for large-scale campaigns. (Callahan Decl., Docket No. 23 ¶ 2.) The Warehouse Workers United campaign is one of those campaigns. (Id. ¶¶ 2, 4.)

In January 2009, Fuentes began to work for the Warehouse Workers United campaign. (Fuentes Dep., Docket No. 21-1 22:21–23:3; Myers Decl. Ex. B, Docket No. 21-2.) A collective bargaining agreement between the Washington-Baltimore Newspaper Guild, Communications Workers of America, Local 32035 (the "Guild") and Change to Win governed Fuentes' employment. (Fuentes Dep., Docket No. 21-1 33:10–34:5; Callahan Decl., Docket No. 23 ¶ 9.) Fuentes was on medical leave from around August 23, 2013, to December 15, 2013. (Fuentes

1

Dep., Docket No. 21-1 77:21–78:5, 83:3–23; Myers Decl. Ex. F, Docket No. 21-6; Myers Decl. Ex. G, Docket No. 21-7.)

In July 2013, Bob Callahan ("Callahan"), Chief of Staff for Change to Win, made the decision to lay off staff on the Warehouse Workers United campaign for budgetary reasons.  (Callahan Decl., Docket No. 23 ¶18; Palma Decl., Docket No. 22 ¶ 11.)  The effective dates of employees' layoffs were staggered in several phases, based on seniority order within a classification in accordance with the collective bargaining agreement.  (Fuentes Dep., Docket No. 21-1 88:11–20; Palma Decl., Docket No. 22 ¶¶ 12–13; Callahan Decl., Docket No. 23 ¶ 9.)  Fuentes received a letter on November 25, 2013 that stated "due to budget restrictions for the Warehouse Workers United Campaign, your position is being eliminated effective December 6, 2013."  (Myers Decl., Docket No. 21 ¶¶ 2, 9; Fuentes Dep., Docket No. 21-1 86:10-87:4; Palma Decl., Docket No. 22 ¶ 13; Callahan Decl., Docket No. 23 ¶ 18.)  Fuentes was on medical leave when she received the letter.  (Fuentes Dep., Docket No. 21-1 83:3–23, 86:23–88:5.)

## B.      Procedural Background

Fuentes initially filed this action in San Bernardino Superior Court. (Compl., Docket No. 1-1.)  She asserted six causes of action: (1) wrongful termination in violation of public policy ("Tameny claim"); (2) interference under the Family and Medical Leave Act, 29 U.S.C. § 2615(a)(1), (the "FMLA"); (3) retaliation for exercising rights under the FMLA, 29 U.S.C. § 2615(a)(2), (b); (4) breach of the implied covenant of good faith and fair dealing; (5) negligent hiring and supervision; and (6) intentional infliction of emotional distress.  (Id.)  Change to Win removed the action to this Court pursuant to federal question, 28 U.S.C. § 1441(a).  (Ntc. Remov., Docket No. 1.)

## II.  LEGAL STANDARD

## A.      Local Rule 7-12

Change to Win argues that the Court should grant its motion under Local Rule 7-12 because Fuentes did not file an opposition.  (Reply, Docket No. 29 at 2.) Local Rule 7-12 recites the following:

The failure to file any required document, or the failure to file it

within the deadline, may be deemed consent to the granting or denial of the motion, *with the exception that a motion pursuant to F.R.Civ.P. 56 may not be granted solely based on the failure to file an opposition.*

L.R. 7-12 (italics supplied).  Therefore, the Court cannot grant Change to Win's motion simply because Fuentes did not oppose.

## B.    Motion for Summary Judgment

Summary judgment is appropriate where the record, read in a light most favorable to the nonmovant, indicates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986). Summary adjudication, or partial summary judgment "upon all or any part of [a] claim," is appropriate where there is no genuine dispute as to any material fact regarding that portion of the claim.  Fed. R. Civ. P. 56(a); see also Lies v. Farrell Lines, Inc., 641 F.2d 765, 769 n.3 (9th Cir. 1981) ("Rule 56 authorizes a summary adjudication that will often fall short of a final determination, even of a single claim . . . .") (internal quotation marks omitted).

Material facts are those necessary to the proof or defense of a claim and are determined by referring to substantive law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  In deciding a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  Anderson, 477 U.S. at 255.[1]

The moving party has the initial burden of establishing the absence of a material fact for trial.  Id. at 256.  "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact . . ., the court may . . . consider the fact undisputed."  Fed. R. Civ. P. 56(e)(2).  Furthermore,

---

[1] "In determining any motion for summary judgment or partial summary judgment, the Court may assume that the material facts as claimed and adequately supported by the moving party are admitted to exist without controversy except to the extent that such material facts are (a) included in the 'Statement of Genuine Disputes' and (b) controverted by declaration or other written evidence filed in opposition to the motion."  L.R. 56-3.

"Rule 56[(a)][2] mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322.  Therefore, where the moving party carries its initial burden, if a nonmovant does not make a sufficient showing to establish the elements of its claims, a court must grant the motion.

## III.  DISCUSSION

### A.    Fuentes' FMLA Claims (Second and Third Causes of Action) Fail as a Matter of Law

Fuentes' FMLA claims fail as a matter of law because (1) she was not an eligible employee under the FMLA and (2) Change to Win had a legitimate, non-discriminatory reason for laying off Fuentes.

#### 1.    Fuentes Was Not an Eligible Employee Under the FMLA

An "eligible employee" is a person whose employer has at least 50 employees within 75 miles of the worksite of the employee requesting FMLA leave.  29 U.S.C. § 2611(2)(B)(ii).  This determination occurs when the employee gives notice of the need for leave.  See 29 C.F.R. § 825.110(e).

August 23, 2013, Fuentes requested to take medical leave.  (Myers Decl. Ex. F, Docket No. 21-6; Fuentes Dep., Docket No. 21-1 75:13–20.)  On that date, Change to Win employed 18 employees in California.  (Callahan Decl., Docket No. 23 ¶ 17; Palma Decl., Docket No. 22 ¶ 14.)  Therefore, Change to Win has demonstrated that Fuentes' FMLA claims fail as a matter of law.  Because Fuentes has not opposed the motion, she has not created a genuine dispute of material fact.

In conclusion, the Court **grants** the motion on this ground.

#### 2.    Change to Win Had a Legitimate, Non-Discriminatory Reason

---

[2] Rule 56 was amended in 2010.  Subdivision (a), as amended, "carries forward the summary-judgment standard expressed in former subdivision (c), changing only one word — genuine 'issue' becomes genuine 'dispute.'"  Fed. R. Civ. P. 56, Notes of Advisory Committee on 2010 amendments.

An employer can deny reinstatement when the employee would have been laid off for reasons unrelated to the leave.  See 29 U.S.C § 2614(a)(3)(B); 29 C.F.R. § 825.216(a).

Change to Win has provided facts demonstrating that Fuentes would have been laid off even if she had not taken leave.  In July 2013, Callahan decided to lay off staff on the Warehouse Workers United campaign for budgetary reasons. (Callahan Decl., Docket No. 23 ¶ 18; Palma Decl., Docket No 22 ¶ 11.)  At the end of 2013, Change to Win decided to entirely end the Warehouse Workers United campaign, so it laid off all of the staff on that campaign.  (Id.; Palma Decl., Docket No. 22 ¶ 13.)  Every Warehouse Workers United employee received a layoff letter with the same reason provided to Fuentes.  (Palma Decl., Docket No. 22 ¶¶ 12–13.) Therefore, Change to Win has demonstrated that it had a legitimate, non-discriminatory reason for laying off Fuentes.  Because Fuentes has not opposed, she has not created a genuine dispute of material fact.

In conclusion, the Court **grants** the motion on this ground.

**B.     LMRA Preempts Fuentes' Fourth, Fifth, and Sixth Causes of Action**

Section 301(a) of the Labor Management Relations Act ("LMRA") gives federal courts exclusive jurisdiction to hear "[s]uits for violation of contracts between an employer and a labor organization."  29 U.S.C. § 185(a); see also Franchise Tax Bd. of State of Cal. v. Const. Laborers Vacation Tr. for S. Cal., 463 U.S. 1, 23 (1983).  Section 301 "mandate[s] resort to federal rules of law in order to ensure uniform interpretation of collective-bargaining agreements, and thus to promote the peaceable, consistent resolution of labor-management disputes." Lingle v. Norge Div. of Magic Chef, Inc., 486 U.S. 399, 404 n.3 (1988).

Courts have applied the preemptive effect of § 301 beyond suits alleging the violation of a collective bargaining agreement in order to further the goal of uniform interpretation of labor contracts.  See, e.g, Allis–Chalmers Corp. v. Lueck, 471 U.S. 202, 210–11 (1985).  Therefore, courts find that a state law claim is preempted if it is so "inextricably intertwined" with the terms of a labor contract that its resolution will require judicial interpretation of those terms.  Id. at 213 (finding that § 301 preempted a claim for breach of the duty of good faith and fair dealing because the court needed to assess "good faith" and "fair dealing" in relation to the contractual obligations).

5

However, § 301 does not preempt a claim that seeks to vindicate "nonnegotiable state-law rights . . . independent of any right established by contract . . . ." Allis–Chalmers Corp., 471 U.S. at 213.  Thus, if a contract cannot waive or alter a state law, and if the rights the state law creates can be enforced without considering the contract's terms, § 301 does not preempt the claim.  See Miller v. AT & T Network Systems, 850 F.2d 543, 546 (9th Cir. 1988).  "If the claim is plainly based on state law, § 301 preemption is not mandated simply because the defendant refers to the CBA in mounting a defense."  Cramer v. Consol. Freightways, Inc., 255 F.3d 683, 691 (9th Cir. 2001) (en banc), cert. denied, 534 U.S. 1078 (2002).

In addition, a defendant cannot invoke preemption by only alleging a "hypothetical connection between the claim and the terms of the CBA," or a "creative linkage" between the subject matter of the suit and the wording of the CBA.  Id. at 691–92.  To prevail, "the proffered interpretation argument must reach a reasonable level of credibility."  Id. at 692.  A preemption argument is not credible "simply because the court may have to consult the CBA to evaluate [a plaintiff's claim]; [similarly,] 'look[ing] to' the CBA merely to discern that none of its terms is reasonably in dispute does not require preemption."  Id. (quoting Livadas v. Bradshaw, 512 U.S. 107, 125 (1994)).

In Cramer, the Ninth Circuit clarified the scope of the LMRA's preemptive effect:

> To the extent our prior cases held or implied that preemption was proper because of the mere possibility that the subject matter of the claim was a proper subject of the collective bargaining process, whether or not specifically discussed in the CBA, we today hold such statements to be an incorrect articulation of § 301 preemption principles.  A state law claim is not preempted under § 301 unless it necessarily requires the court to interpret an existing provision of a CBA that can reasonably be said to be relevant to the resolution of the dispute.

Id. at 693; see also Humble v. Boeing Co., 305 F.3d 1004, 1007–08 (9th Cir. 2002) (stating that Cramer "revised [the] framework for analyzing § 301 preemption and synthesized the considerations involved").

6

To determine whether a cause of action is preempted by the LMRA, a court needs to use a two-part test established by the Ninth Circuit.  Burnside v. Kiewit Pac. Corp., 491 F.3d 1053, 1059 (9th Cir. 2007).  First, a court needs to determine "whether the asserted cause of action involves a right conferred upon an employee by virtue of state law, not by a CBA.  If the right exists solely as a result of the CBA, then the claim is preempted, and . . . analysis ends . . . ."  However, if "the right exists independently of the CBA, [a court] must still consider whether it is nevertheless substantially dependent on analysis of a collective-bargaining agreement.  If such dependence exists, then the claim is preempted by section 301; if not, then the claim can proceed under state law."  Id. at 1059–60 (internal quotations and citations omitted).

### 1.    LMRA Preempts Fuentes' Breach of Implied Covenant of Good Faith and Fair Dealing Claim (Fourth Cause of Action)

"Under California law, a claim for breach of this implied covenant [of good faith and fair dealing] is necessarily based on the existence of an underlying contractual relationship, and the essence of the covenant is that neither party to the contract will do anything which would deprive the other of the benefits of the contract."  Milne Emps. Ass'n v. Sun Carriers, 960 F.2d 1401, 1411 (1991).   As a result, courts have generally held that § 301 preempts the California state cause of action for breach of the implied covenant of good faith and fair dealing when an employee's position is governed by a collective bargaining agreement. See, e.g., Cook v. Lindsay Olive Growers, 911 F.2d 233, 238–39 (9th Cir. 1990); Chmiel v. Beverly Wilshire Hotel Co., 873 F.2d 1283, 1286 (9th Cir. 1989).

Here, Fuentes' employment was governed by a collective bargaining agreement between the Guild and Change to Win.  (Fuentes Dep., Docket No. 21-1 33:10–34:5; Callahan Decl., Docket No. 23 ¶ 9.)  In addition, her breach of the implied covenant claim is based on the contract.  For instance, Fuentes states that Change to Win terminated her "without conducting any reasonable investigation concerning its obligations under said contract, without good or sufficient cause, for reasons extraneous to the contract, and for the purpose of frustrating Plaintiff's employment of the benefits of the Contract."  (Compl., Docket 1-1 ¶ 42.)  Because the covenant of good faith and fair dealing claim does not exist separate and apart from the collective bargaining agreement and requires the Court to interpret the agreement, this state claim is preempted under § 301.  Thus, this cause of action fails as a matter of law.

In sum, the Court **grants** Change to Win's motion on this ground.

### 2.    The LMRA Preempts Fuentes' Negligent Hiring and Supervision Claim (Fifth Cause of Action)

In Dent v. National Football League, No. C 14-02324 WHA, 2014 WL 7205048, at *7 (N.D. Cal. Dec. 17, 2014), the court determined that § 301 preempted a plaintiff's negligent hiring claim.  Because the collective bargaining agreement outlined duties, the court needed to examine the collective bargaining agreement to determined whether the defendant was negligent.  Id.  The court stated that "[w]hether the NFL was negligent cannot be fairly determined without ascertaining the full scope of player benefits contained in these clauses.  To determine if the NFL negligently hired and retained medical personnel, this Court would need to interpret what the NFL has already required in the various CBA provisions outlined above."  Id.

In contrast, the Ninth Circuit determined in Smith v. United Parcel Serv., Inc., 433 F. App'x 623, 626 (9th Cir. 2011), that § 301 did not preempt a plaintiff's negligent training and supervision claims.  The court stated the following reasoning:

> [The plaintiff's] negligent training and supervision claims do not require consideration of the applicable collective-bargaining agreement.  First, the harm alleged by [the plaintiff] is not his ultimate termination—the review of which might implicate the collective-bargaining agreement—but rather the harassment, fear, and anxiety that [the plaintiff] claims to have experienced in the months preceding his termination and that [the defendant] allegedly did not prevent despite [the plaintiff's] complaints.  Second, the [defendant's] employees whose conduct allegedly harmed [the plaintiff] were the managers who did not respond to [the plaintiff's] concerns about harassment.  Because [the defendant's] managers are not covered by any collective-bargaining agreement, it is not necessary to refer to such an agreement to assess [the plaintiff's] negligent supervision and training claims.  Because [the plaintiff's] fact-intensive state law claims are not preempted, we reverse and remand for the district court to exercise its discretion in deciding whether to

8

assess the merits of [the plaintiff's] state law claims or to decline jurisdiction over the state claims and dismiss them without prejudice.

Id. at 626–27 (internal citations and quotations omitted).

Here, § 301 preempts Fuentes' negligent supervision claim. In her cause of action, Fuentes states that "Change to Win supervisors, Defendant PALMA and Sherheryar Kaoosji, were unfit and/or incompetent to perform the work for which they were hired." (Compl., Docket No. 1-1 ¶ 45.) However, unlike in Smith, the duties and responsibilities of Change to Win's managers and supervisors were governed by the terms of the collective bargaining agreement. (Fuentes Dep., Docket No. 21-1 33:10–34:5; Callahan Decl., Docket No. 23 ¶ 9.) In 2013, the Guild represented the staff of Change to Win, including those staff who were assigned to the Warehouse Workers United campaign. (Id.) Objective Five of the collective bargaining agreement ("Protecting Management Rights") states, "Change to Win reserves the right to set its operating structure and procedures, subject to appropriate notification to the Guild of any changes and to discussion with the Labor Management Committee on the impact of those changes on the wages, hours, and working conditions of employees." (Callahan Decl., Docket No. 23 ¶¶ 11–15.) The collective bargaining agreement further states "Change to Win reserves the right to determine staffing configurations and staffing levels, to identify campaign targets, structure, resources and staffing and to make work assignments." (Id.) Therefore, Change to Win's right to direct its workforce and manage its operations are addressed in the collective bargaining agreement, so the Court must consider the collective bargaining agreement to determine whether Change to Win was negligent. (Id.) Accordingly, the LMRA preempts this claim.

In conclusion, the Court **grants** Change to Win's motion on this ground.[3]

### 3.    The LMRA Preempts Fuentes' Intentional Infliction of Emotional

---

[3] Change to Win has also argued that there is no evidence that Palma or Kaoosji engaged in any act of discrimination against Fuentes or against any others during their employment at Change to Win, or that Change to Win was aware or should have been aware of any alleged misconduct. (Mot., Docket No. 19 at 15.) Therefore, Change to Win has pointed to an absence of evidence. Because Fuentes has not provided any facts in her opposition, Change to Win is entitled to summary judgment for this reason as well.

**Distress Claim (Sixth Cause of Action)**

"An emotional distress claim is not preempted when it can be resolved without examination or interpretation of the CBA." Cook v. Lindsay Olive Growers, 911 F.2d 233, 239 (9th Cir. 1990). However, when analyzing whether the employer's behavior is extreme and outrageous involves an examination and interpretation of the collective bargaining agreement, the LMRA preempts the claim. Id.; Harris v. Alumax Mill Prod., Inc., 897 F.2d 400, 402–03 (9th Cir. 1990) (holding that § 301 preempted an intentional infliction of emotional distress claim that alleged wrongful termination based on application of an attendance policy set forth in a CBA and thus required interpretation of the CBA); Hyles v. Mensing, 849 F.2d 1213, 1216 (9th Cir. 1988) (holding that emotional distress complaints based on conduct governed by the CBA were preempted).

Here, Fuentes makes broad assertions, but the basis of Fuentes' claim appears to be her layoff.  (See, e.g., Compl., Docket No. 1-1 ¶ 53 ("The conduct complained of hereinabove was outside the conduct expected to exist in the workplace, was intentional and malicious and done for the purpose of causing Plaintiff to suffer humiliation, mental anguish, and emotional and physical distress.")  At all times during Fuentes' employment, Change to Win and the Guild were parties to a collective bargaining agreement that governed the terms and conditions of Fuentes' employment with Change to Win.  (Callahan Decl., Docket No. 23 ¶ 9.)  Therefore, because Fuentes' termination was covered by the collective bargaining agreement, LMRA preempts her claim.

In conclusion, the Court **grants** Change to Win's motion on this ground.[4]

## C.     Fuentes' Tamney Claim (First Cause of Action) Fails as a Matter of Law

Change to Win argues that Fuentes' Tamney claim fails because (1) the California Family Rights Act ("CFRA") does not apply to Fuentes because Change to Win employed fewer than 50 people in California at the time Fuentes requested leave and (2) Fuentes cannot offer evidence to support a prima facie case for

---

[4] Change to Win also points to an absence of evidence regarding this claim.  (Mot., Docket No. 19 at 17.)  Fuentes has not filed an opposition or pointed to any facts to the contrary. Therefore, Change to Win would prevail on this argument as well.

discrimination under the Fair Employment Housing Act ("FEHA").  (Mot., Docket No. 19 at 20.)

The California Supreme Court created a common law claim for wrongful termination in violation of public policy in the case of <u>Tameny v. Atlantic Richfield Co.</u>, 27 Cal. 3d 167 (1980).  A plaintiff needs to establish (1) an employer-employee relationship; (2) termination or other adverse employment action; (3) the termination or adverse action was a violation of public policy; (4) the termination or adverse action was a legal cause of Plaintiff's damages; and (5) the nature and extent of the damages.  <u>Holmes v. Gen. Dynamics Corp.</u>, 17 Cal. App. 4th 1418, 1426 (1993).  "[T]o sustain a claim of wrongful discharge in violation of fundamental public policy, [a plaintiff] must prove that his dismissal violated a policy that is (1) fundamental, (2) beneficial for the public, and (3) embodied in a statute or constitutional provision."  <u>Turner v. Anheuser–Busch, Inc.</u>, 7 Cal. 4th 1238 (1994) (footnotes omitted).

### 1.  The CFRA Does Not Apply to Fuentes, So Her Claim Fails as a Matter of Law

The CFRA does not apply "if the employer employs less than 50 employees within 75 miles of the worksite where that employee is employed."  Cal. Gov't Code § 12945.2(b).  As previously discussed, Change to Win employed 18 employees in California.  (Callahan Decl., Docket No. 23 ¶ 17; Palma Decl., Docket No. 22 ¶ 14.)  Therefore, Fuentes cannot demonstrate that her dismissal violated the CFRA, so she cannot use a CFRA claim to assert that her termination violated public policy.

In conclusion, the Court **grants** Change to Win's motion on this ground.

### 2.  Fuentes Has Not Offered Evidence of Pretext, so Her Claim Fails as a Matter of Law

For discrimination and retaliation claims, California has adopted the three-stage burden shifting test in <u>McDonnell Douglas v. Green</u>, 411 U.S. 792 (1973).  <u>Yanowitz v. L'Oreal USA, Inc.</u>, 36 Cal. 4th 1028, 1042 (2005); <u>Guz v. Bechtel Nat'l, Inc.</u>, 24 Cal. 4th 317, 354 (2000).  Once the plaintiff has made a prima facie showing of employment discrimination, "the burden then shifts to the employer to offer a legitimate, nondiscriminatory reason for the adverse

employment action." <u>Deschene v. Pinole Point Steel Co.</u>, 76 Cal. App. 4th 33, 44 (1999). If the employer offers such a reason, "plaintiff must offer evidence that the employer's stated reason is either false or pretextual, or evidence that the employer acted with discriminatory animus, or evidence of each which would permit a reasonable trier of fact to conclude the employer intentionally discriminated." <u>Id.</u>

Change to Win has presented a legitimate, nondiscriminatory reason for Fuentes' dismissal. Change to Win ended the Warehouse Workers United campaign. (Callahan Decl., Docket No. 23 ¶ 18; Palma Decl., Docket No. 22 ¶ 11.) In addition, during her deposition, Fuentes testified that no one at Change to Win said anything to her to make her believe that she was being laid off because she took a medical leave. (Fuentes Dep., Docket No. 21-1 104:4–12.) When asked why Fuentes alleged that she was laid off in retaliation she stated the following: "[b]ecause you're asking me what I thought. And that's what I'm telling you, is that's the way I – that's how I saw it." (<u>Id.</u> 104:13–19.) Therefore, Change to Win presented a legitimate, nondiscriminatory reason, and because Fuentes did not oppose this motion, she has not presented evidence of pretext.

In conclusion, the Court **grants** Change to Win's motion on this ground.

## IV. CONCLUSION

For the aforementioned reasons, the Court **grants** Change to Win's motion.

**IT IS SO ORDERED.**